UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 6:13-CR-20-GFVT-HAI-26 |
| | ) | RECOMMENDED DISPOSITION |
| JASON WADE TAYLOR, | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, on referral (D.E. 1106), considers reported violations of supervised release conditions by Defendant Jason Wade Taylor. District Judge Van Tatenhove entered a judgment against Defendant on May 29, 2014, for one count of conspiracy to manufacture a detectable amount of methamphetamine. D.E. 632. Defendant was sentenced to 51 months of imprisonment, followed by 3 years of supervised release. *Id*. at 2-3. His sentence was later reduced to 41 months of imprisonment, followed by 3 years of supervised release pursuant to 18 U.S.C. § 3582(c)(2). D.E. 997. Defendant began his supervised release term on July 27, 2016.

**I.**

On May 5, 2017, the United States Probation Office ("USPO") issued the Supervised Release Violation Report that initiated this revocation. The Report charges four violations. The USPO issued an addendum to the Report ("the Addendum") on May 26, 2017, charging an additional violation. The four charged violations contained in the Report and the single violation contained in the Addendum are based on the following factual allegations.

On May 3, 2017, USPO Greiwe received a call from Captain James Hammond of the Knox County Sheriff's Office located in Knoxville, Tennessee. Captain Hammond reported that,

on April 29, 2017, officers were called to an emergency room in the Knoxville area for a possible drug overdose. Upon their arrival, officers encountered an individual named Chadlee Strickland in Defendant's automobile. Strickland was unresponsive and not breathing. When questioned by officers, Defendant reported that he had driven Strickland to the emergency room for an overdose on heroin and fentanyl. Defendant stated that he was living with Strickland at 9526 Westland Drive in Knoxville, and claimed that when he returned to the shared residence earlier in the day, he found Strickland unresponsive. Ultimately, Strickland was treated, regained consciousness, and left the hospital against medical advice. He was later arrested on an unrelated warrant from Blount County, Tennessee.

Captain Hammond also advised USPO Greiwe that the Knox County Sheriff's Office was engaged in an ongoing drug trafficking investigation in the Knoxville area involving a hotel room that had been rented in Defendant's name at a hotel located on North Weisgarber Road. Specifically, Captain Hammond revealed that, on May 3, 2017, the primary subject of the investigation, Sawyer McCrady, left the hotel room in Defendant's automobile and was stopped by law enforcement. A search of the vehicle revealed 3 ounces of methamphetamine, 1 ounce of heroin, and a small amount of marijuana. Investigators returned to the hotel room and obtained Defendant's permission to search the room. A search of the room revealed 2 pipes that were believed to contain marijuana and methamphetamine residue. Defendant was arrested and charged with Unlawful Drug Paraphernalia in violation of Tennessee Code § 39-17-425, a Class A misdemeanor. Captain Hammond further revealed that officers obtained Defendant's permission to use his cell phone to contact a female who brought 4 people to the hotel to purchase methamphetamine. Defendant allegedly admitted to being the "middle-man" for drug transactions, and stated that he would put buyers in contact with McCrady for the purpose of

obtaining illegal substances. He further stated that he received payment for his work in the form of controlled substances for personal use.

On May 21, 2017, Defendant was arrested in Whitley County, Kentucky, and charged with several traffic-related violations and possession of drug paraphernalia. Defendant was arrested on an active warrant, and a search revealed two hypodermic needles on his person. He later pled guilty to failure of non-owner operator to maintain required insurance, operating on a suspended/revoked license, and possession of drug paraphernalia. He was sentenced to 30 days imprisonment, conditionally discharged for 2 years. The most serious violation, possession of drug paraphernalia, is a Class A misdemeanor.

Based on these factual allegations, the Report charges, in Violation #1, a violation of the Standard Condition requiring that Defendant "shall not associate with any persons engaged in criminal activity . . . unless granted permission to do so by the probation officer." Specifically, the Report alleges that Defendant associated with Chadlee Strickland and Sawyer McCrady, both of whom were engaged in illegal activity involving controlled substances. This is a Grade C violation.

In Violations #2 and #3, the Report charges Defendant with violating the condition of his supervised release requiring that he "not commit another federal, state, or local crime." Specifically, as the basis for Violation #2, the Report alleges that Defendant was arrested on May 5, 2017, and charged with unlawful drug paraphernalia in violation of Tennessee law. This is a Grade C violation. As the basis for Violation #3, the Report alleges that Defendant made statements to Tennessee law enforcement officers indicating that he was the middle-man in a series of drug-trafficking transactions involving methamphetamine. This would constitute conduct in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846, and is a Grade A violation.

The Report charges, in Violation #4, a violation of the condition requiring that Defendant "notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer." Specifically, the Report alleges that Defendant did not contact the USPO following his interaction with Tennessee law enforcement officials on April 29, 2017. This is a Grade C violation.

Finally, in Violation #5, the Addendum charges a single violation of the condition requiring that Defendant "not commit another federal, state, or local crime." Specifically, the Addendum alleges that Defendant was convicted of possession of drug paraphernalia in violation of KRS § 218A.500(2), a Class A misdemeanor, on May 24, 2017. This is a Grade C violation.

## II.

On June 12, 2017, the Court conducted an initial appearance pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure. D.E. 1111. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. *Id*. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id*. The Court found that Defendant failed to meet the heavy § 3143(a) defense burden and remanded him to the custody of the United States Marshal. *Id*.

At the final hearing on June 20, 2017, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 1114. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #1, #2, #4, and #5, and the government moved to dismiss Violation #3. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations #1, #2, #4, and #5 as described in the Report and the Addendum. *Id*. The United States thus established these violations under the standard of section 3583(e). *Id*.

The parties did not agree as to the sentence to be imposed. The government argued for revocation with 18 months of imprisonment, followed by 3 years of supervised release. Defendant argued for a Guidelines Range sentence of imprisonment, with 3 years of supervised release to follow.

### III.

The Court has evaluated the entire record, the Report, the Addendum and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all of the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pled guilty to the Class C felony of conspiracy to distribute methamphetamine. *See* 18 U.S.C. §§ 846; 841(b)(1)(C); 3559(a)(3). Defendant's conviction carries a 24-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3). Under 18 U.S.C. § 3583(h) and 21 U.S.C. § 841(b)(1)(C), there is no maximum term of supervised release that may be re-imposed.

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007) ("[T]he policy statements found in Chapter Seven of the United States Sentencing Guidelines . . . 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under section 7B1.1, Defendant's admitted conduct in Violations #1, #2, #4, and #5 would qualify as Grade C

violations. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and a Grade C violation (given the dismissal of the Grade A violation), Defendant's Range under the Revocation Table of Chapter 7 is 8 to 14 months. U.S.S.G. § 7B1.4(a).

The government argued for revocation with 18 months of imprisonment, followed by 3 years of supervised release, and explained that this recommendation was calculated by beginning in the middle of the 8-to-14-month Guidelines Range and making appropriate adjustments based on the section 3553(a) factors. Specifically, the government stated that Defendant's criminal history, pattern of criminal conduct, and characteristics as a severe drug addict support an upward variance in this case. The government argued that Defendant's criminal history is extensive and includes a large number of controlled substance convictions. Additionally, the government noted that Defendant's underlying offense of conviction is a controlled substance offense, and his conduct in Violations #1, #2, #4, and #5 is directly related to that offense and evidences a pattern of ongoing criminal conduct that threatens the safety of the community. Further, the government argued that, although there is no direct evidence that Defendant actually used controlled substances during this criminal activity, he nonetheless surrounded himself with controlled substances and drug paraphernalia and was likely to begin using drugs again in the near future. Finally, the government argued that Defendant should not receive credit for acceptance of responsibility through stipulation because it moved to dismiss Violation # 3, a Grade A violation.

Defense counsel argued in favor of a Guidelines Range sentence of imprisonment, followed by 3 years of supervised release. Defense counsel stated that, although Defendant has an extensive criminal history, it was a major factor in calculation of the sentence on his

6

underlying offense and should only be given little weight on revocation. Additionally, defense counsel stated that a Guidelines Range sentence is appropriate given Defendant's limited record of compliance on supervised release thus far. Defense counsel explained that, while Defendant understands the condition of his supervised release requiring him to report any contact with law enforcement to the USPO office, he did not realize that he needed to report his interaction with the officers at the emergency room on April 29, 2017, since he was not arrested or charged with a crime. Further, counsel stated that Defendant has a good work history and strong family ties and support, and can be successful if he tries harder, makes better decisions, and avoids criminal activity. Finally, defense counsel emphasized that Defendant is a drug addict and stated that he could benefit from further supervised release.

Defendant addressed the Court and stated that he takes full responsibility for his actions. Defendant emphasized his compliance with the conditions of his supervised release for almost a year, including maintaining employment, and stated that he has good familial support. Defendant stated that he made a mistake, spent time with the wrong people, and caught himself too late. He asked for a Guidelines Range sentence.

**IV.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was involved in a large-scale conspiracy to manufacture methamphetamine.

According to his PSR, Defendant provided pseudoephedrine, a necessary ingredient, to the methamphetamine cooks in exchange for receiving a quantity of the finished methamphetamine product. Although Defendant did not occupy a leadership role in the conspiracy, his involvement in producing copious amounts of methamphetamine was dangerous.

The Court next considers Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public. Defendant has an extensive criminal history full of drug-related convictions. Additionally, Defendant's conduct in Violations #1, #2, #4, and #5 involves serious criminal behavior that is related to the underlying offense and indicates that he poses a significant risk of future criminal activity. Defendant drove his roommate Strickland to the emergency room after he allegedly overdosed on heroin and fentanyl. After watching his friend struggle to live through this overdose, Defendant continued to engage in criminal behavior by renting a hotel room in his name, allowing McCrady, the subject of an ongoing drug investigation, to enter the room with drugs and paraphernalia, and facilitated trafficking through, at a minimum, allowing McCrady to use his vehicle. Although Defendant claims he made a bad decision, his pattern of criminal behavior in these violations proves a pattern beyond one bad choice. The public must be protected from Defendant's criminal behavior.

The Court is also required to consider the need to provide Defendant with education, training, and treatment. Defendant completed the RDAP program while incarcerated, but the Court is concerned about his continued involvement with drugs. Accordingly, the USPO should evaluate Defendant for necessary drug abuse treatment upon his release from incarceration.

The Court reminds Defendant that the Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the

court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Defendant has certainly committed a significant breach of the Court's trust. Defendant's conduct in Violations #1, #2, #4, and #5 includes a series of bad decisions amounting to significant criminal behavior. Defendant was originally incarcerated for a serious drug-trafficking crime, and has now committed multiple violations involving drugs. He continues to disregard the dangers of drug use and trafficking and does not respect the conditions of his supervised release. A significant period of incarceration is warranted.

Ultimately, a sentence of 18 months of imprisonment is above the Guidelines Range, and the Court finds that an upward variance is appropriate based on Defendant's lengthy criminal history of drug trafficking and his significant breach of the Court's trust through multiple violations involving new criminal behavior. *See Johnson*, 640 F.3d at 205 ("[I]f a sentence is outside the advisory [Guidelines] range, the court is required by statute to state 'the *specific reason* for the imposition of a sentence different from [that range]'" and consider the extent of the deviation.) (quoting 18 U.S.C. § 3553(c)(2)). For the reasons stated above, the Court finds this sentence is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). Defendant is old enough to realize that his continued involvement with drugs is dangerous. He must make better decisions and comply with all of the conditions of his supervised release if he wishes to avoid lengthy terms of imprisonment in the future. Additionally, this sentence, followed by 3 years of supervised

9

release, is adequate to deter similar future conduct, protect the public, and address the breach of the trust that has occurred.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's convictions, pursuant to 18 U.S.C. §§ 841(b)(1)(C) and 3583(h), there is no maximum period of supervised release that may be re-imposed following revocation. The Court recommends that Defendant be required to complete a 3-year term of supervised release following imprisonment under the same conditions previously imposed.

Based on the foregoing, the Court **RECOMMENDS**:

1. Dismissal of Violation #3 pursuant to the motion of the United States;

2. Revocation with a term of 18 months of imprisonment;

3. A term of supervised release of 3 years, under the conditions previously imposed; and

4. That, upon his release, the USPO evaluate Defendant for drug abuse treatment in its discretion.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 22nd day of June, 2017.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge