UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:13-CR-20-GFVT-HAI-26 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| JASON WADE TAYLOR, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, considers reported supervised release violations by Defendant Jason Wade Taylor. *See* D.E. 1456 at 2. District Judge Van Tatenhove entered a judgment against Defendant in June 2014, following Defendant's guilty plea to conspiracy to manufacture a detectable amount of methamphetamine (a lesser-included offense). D.E. 632. Defendant was originally sentenced to fifty-one months of imprisonment and a three-year term of supervised release. *Id.* at 2–3. In October 2015, Defendant's sentence was reduced to forty-one months. *See* D.E. 997. In July 2016, Defendant was released from the custody of the Bureau of Prisons ("BOP") to begin service on his first term of supervision.

In September 2017, Defendant's term of supervised release was revoked due to his association with a person engaged in criminal activity, the commission of a crime (based upon a charge of unlawful drug paraphernalia in Tennessee), his failure to notify his probation officer of contact with law enforcement, and the commission of a crime (based upon a charge of possession of drug paraphernalia in Kentucky). *See* D.E. 1143 at 1. For those violations, Defendant was sentenced to eighteen months of imprisonment, followed by three years of supervised release. *Id.*

at 2–3.  Defendant was released from BOP custody in October 2018 to begin service on his second term of supervision.

In July 2019, Defendant's term of supervised release was revoked due to his use and possession of methamphetamine.  *See* D.E. 1284 at 1.  For those violations, Defendant was sentenced to twenty-one months of imprisonment, followed by one year of supervised release.  *Id.* at 2-3.  Defendant was released from BOP custody in February 2021 to begin service on his third term of supervision.

### I.

On July 12, 2021, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings.  The Report charges Defendant with two violations.  Violation #1 alleges Defendant violated the condition that requires him to not commit another federal, state, or local crime.  According to the Report,

> On July 6, 2021, Taylor contacted this officer via text message to report he was arrested on July 4, 2021, and charged with Operating Motor Vehicle Under Influence of Alcohol .08 – 1st Offense. Per the arrest citation, Taylor was observed standing near his vehicle, which was located in a ditch following a single vehicle accident on Cumberland Falls Highway. Upon making contact with Taylor, the officer described him to have pinpoint constricted pupils that reacted minimally to light. Field sobriety tests were conducted but Taylor declined to perform the walk and turn and the one leg stand due to balance issues. He was placed under arrest and transported to a local hospital, where he submitted to a blood test. Taylor was subsequently released on July 5, 2021, on his own recognizance. This offense is punishable by a fine of not less than $200 nor more than $500, or be imprisoned in the county jail for not less than 48 hours nor more than 30 days, or both.

This is a Grade C violation.

Violation #2 charges Defendant with violating the condition that requires him to report to the probation officer as instructed.  According to the Report, on July 6, 2021, Probation Officer Beasley instructed Defendant to report to the probation office the following day.  Defendant failed to report, and Officer Beasley attempted to contact

Defendant by phone. Officer Beasley left Defendant a voicemail instructing him to report to the probation office on July 8, 2021. Defendant failed to report as instructed. This is also a Grade C violation.

On July 30, 2021, the USPO issued an Addendum to the Report ("the Addendum"). The Addendum charges Defendant with four additional violations. According to the Addendum,

> On July 18, 2021, Taylor was arrested by the Oak Ridge, Tennessee, Police Department and charged with Driving Under the Influence, Unlawful Possession of a Firearm, Simple Possession of Schedule I Drug, Simple Possession of Schedule II Drug, and Failure to Maintain Lane, in in Anderson County General Sessions Court, Case No. 21GS2027-2. Per the Affidavit of Complaint, Taylor was observed operating a vehicle at approximately 3:15 PM, which left the roadway striking the median and hitting a curb three times. The vehicle came to a stop and Taylor attempted to exit the vehicle while it was still in drive. The officer observed a magazine belonging to a firearm in the driver's side door and several knives in the vehicle. Taylor denied consuming any alcohol or narcotics but admitted to consuming his prescribed Suboxone at 3:00 PM that date. Taylor consented to a search of the vehicle and advised there were needles in the center console. Four needles were located in the console, a plastic bag containing 1.2 grams of a black substance suspected to be heroin was found between the console and the passenger seat, and a Ruger MK II pistol was found in the air box beneath the hood of the car. While enroute to the jail, Taylor was observed trying to remove something from his pants. He was searched and officers located a plastic bag containing .5 grams of a white substance, which Taylor stated was methamphetamine.

Violation #3 charges Defendant with violating the condition that he not commit another federal, state, or local crime. In support of this charge, the Addendum reports,

> Taylor was convicted of Driving Under the Influence and the remaining charges were adjudicated as nolle prosequi (dismissed). Taylor entered a guilty plea to Driving Under the Influence – 1st Offense on July 27, 2021, and received a sentence of 11 months and 29 days jail, with nine days of credit and the balance probated and a $350 fine. His term of probation is scheduled to expire on July 26, 2022.

This is a Grade C violation.

Violation #4 alleges Defendant violated the conditions requiring that he not commit another federal, state, or local crime and that he not unlawfully possess a controlled substance. The

3

Sixth Circuit has held that use is the equivalent of possession, and, given Defendant's criminal history, the simple possession of methamphetamine constitutes conduct in violation of 21 U.S.C. § 844(a), a Class E felony. This is a Grade B violation.

Violation #5 alleges Defendant violated the conditions requiring that he not commit another federal, state, or local crime and that he not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon.[1] Violation #5 charges Defendant with conduct that would be a federal crime, that is, felon-in-possession of a firearm, a Class C felony pursuant to 18 U.S.C. § 922(g). This is a Grade B violation.

Violation #6 alleges Defendant violated the condition requiring that he not leave the federal judicial district where he is authorized to reside without prior permission from the Court or the probation officer. The Addendum reports,

> On July 28, 2021, this officer was notified that Taylor was in custody in Knoxville, Tennessee, and would be appearing later that date for an Initial Appearance on his TSR violation. He had been arrested in Anderson County, Tennessee, on July 18, 2021, and was held on local charges prior to transferring into federal custody on July 28, 2021.

This is a Grade C violation.

## II.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on July 30, 2021. D.E. 1460. During the hearing, Defendant requested a preliminary hearing on Violations #3, #4, #5, and reserved his right to a preliminary hearing on Violations #1, #2, and #6. *Id.* At that time, the United States made an oral motion for detention; Defendant did not request release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

---

[1] Violation #5 originally charged Defendant with committing a state crime stemming from his possession of a firearm. However, on August 3, 2021, the USPO issued a Second Addendum to the Report amending Violation #5 as charging a violation of federal law for this conduct.

4

At the preliminary hearing on August 3, 2021, the government called Officer Beasley as a witness, and her testimony verified the substance of the Report and Addendum. The Court heard argument from the parties on Violations #4 and #5. The Court found the government established sufficient probable cause that Defendant committed Violations #3, #4, and #5 (as stated in the Second Addendum). Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing on Violations #1, #2, and #6.

At the final hearing on August 13, 2021, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 1467. Defendant waived a formal hearing and stipulated to Violation #4 as set forth in the Addendum, and the government made an oral motion to dismiss Violations #1, #2, #3, #5, and #6. *Id.* The Court found Defendant to be competent to stipulate to Violation #4 and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). Defendant's stipulation permits the Court to find that he engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

During the final hearing, the parties each presented their recommended sentence. The government recommended twenty-four months of imprisonment and the defense recommended twenty-one months of imprisonment. Both parties jointly recommended that no additional term of supervised release be imposed. The government focused on the nature and circumstances of the original offense, Defendant's history and characteristics, and the breach of the Court's trust. First, the government noted that while this is Defendant's third revocation, his criminal history does not involve heroin. The government argued this indicates that Defendant is falling deeper

5

into his substance abuse rather than overcoming it. The government also argued that, while there is a need for deterrence, supervision has proven unsuccessful in deterring Defendant from further criminal conduct. Likewise, the government stated that the public will be best protected by a statutory-maximum sentence. Rather than impose an additional term of supervision, the government noted that the prior and current revocations stem from Defendant's new felony conduct. Thus, any similar future conduct would result in Defendant being placed back in custody on new charges, which would protect the public. The government concluded that there are no additional resources that the USPO should expend on Defendant in light of his refusal to take advantage of them.

Defense counsel agreed with the government's assessment regarding the recommendation that no additional term of supervision be imposed. However, defense counsel argued that twenty-one months of imprisonment is punitive, protects the public, and is otherwise sufficient given Defendant's acceptance of responsibility. Defense counsel also requested that Defendant be placed in a halfway house prior to being released from BOP custody to create a stable foundation and transition for his release.

Defendant declined to address the Court.

### III.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction for conspiracy to manufacture a detectable amount of methamphetamine is a Class C felony. *See* 21 U.S.C. §§ 841(b)(1)(C), 846; 18 U.S.C. § 3559(a). For a Class C felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). However, based on the underlying offense of conviction, there is no maximum

amount of supervised release that the Court may reimpose. *See* 21 U.S.C. §§ 841(b)(1)(C), 846; 18 U.S.C. § 3583(h).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade B violation. Given Defendant's criminal history category of VI (the category at the time of his conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is twenty-one to twenty-seven months. *See* U.S.S.G. § 7B1.4(a). However, because of the statutory maximum imposed by 18 U.S.C. § 3583(e)(3) for imprisonment when the underlying offense of conviction is a Class B felony, the range effectively becomes twenty-one to twenty-four months. Both parties agreed to this calculation of the range.

## IV.

The Court has reviewed the entire record, including the Report, the Addenda and their accompanying documents, Defendant's underlying judgment and sentencing materials, and the materials related to Defendant's prior revocation. The Court has also considered all of the 18

7

U.S.C. § 3553(a) factors imported into the § 3583(e) analysis, which the parties addressed at Defendant's final hearing. Through its consideration, the Court will recommend that Defendant's supervision be revoked and that he be sentenced to twenty-four months of imprisonment with no supervised release to follow.

Congress does *mandate* revocation and imprisonment in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1). But, even if revocation and imprisonment were not mandated by Congressional directive, revocation and imprisonment would still be appropriate in this case based upon the § 3553(a) factors. *See* U.S.S.G. § 7B1.3(a).

First, concerning the nature and circumstances of the underlying offense, Defendant pled guilty to conspiring to manufacture a detectable amount of methamphetamine. His present possession of heroin and other conduct demonstrate that he continues to associate, on some level, with individuals who traffic in controlled substances. Further, this is Defendant's first offense involving heroin, which reflects that he is falling further into his substance abuse rather than overcoming it.

The Court next considers Defendant's history and characteristics. Defendant is clearly an addict, and his criminal history demonstrates that, when he abuses drugs, he is at risk for committing violent crimes. Notably, the conduct leading to the current revocation involves repeated criminal conduct that seriously endangers the public. Thus, the need to deter criminal conduct, both for Defendant and society, and the need to protect the public from further crimes heavily influence the Court's recommended sentence.

The Court must also consider whether a defendant needs any education, training, or treatment. Defendant has repeatedly refused to take advantage of the resources provided to him

by the Court and the USPO.  Although Defendant needs treatment to overcome his substance abuse, the Court cannot justify expending any further resources on an individual who refuses to utilize them.  On this record, the Court will also decline to recommend that Defendant be placed in a halfway home prior to his release from BOP custody.  There is simply nothing mitigating in the record that would support such a recommendation.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range.  In this case, Defendant's Guidelines range is reduced by the statutory maximum of imprisonment the Court may impose when the underlying offense of conviction is a Class B felony.  Twenty-four months is sufficient, but not greater than necessary, to account for Defendant's serious and troubling conduct underlying the present violations.

Notably, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue.  *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.").  Defendant received leniency from the Court in the past in terms of an original bottom-end sentence that was later reduced.  However, rather than take the leniency he received as a motivator to adhere to the conditions of his supervision, Defendant has eschewed the attempts of the USPO to supervise him, as demonstrated by his previous and present violations.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation.  *See* 18

U.S.C. § 3583(b), (h).  The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h).  Defendant's conviction under 21 U.S.C. § 841 and § 846 does not carry a maximum term of supervised release.  *See* 21 U.S.C. § 841, 846.  However, the Court does not recommend an additional term of supervision.  Defendant has repeatedly violated the conditions of his release and has given the Court no hope that another term of supervision would be successful. The Court cannot justify continuing to expend resources on Defendant when he has repeatedly refused to take advantage of them.

### V.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of Violation #4;

(2) The government's motion to dismiss Violations #1, #2, #3, #5, and #6 be granted;

(3) Revocation and imprisonment for a term of twenty-four months; and

(4) No term of supervised release to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 17th day of August, 2021.

Signed By:
Hanly A. Ingram
United States Magistrate Judge